OPINION
{¶ 1} Defendant-Appellant, Jonathan Steele, appeals his conviction and sentence in the Butler County Court of Common Pleas for 26 counts of pandering sexually oriented matter involving a minor, and 26 counts of illegal use of a minor in nudity-oriented material. We affirm the convictions and sentence.
 {¶ 2} The record reveals the following relevant facts. In June of 2001, appellant, a Middletown resident, sold a Macintosh hard drive to Mark Suzuki, a resident of Lompoc, California. Suzuki connected the hard drive to his computer and discovered thousands of images of child pornography stored there. Personally offended by the images, Suzuki contacted Detective Fred Shuemake of the Middletown police and informed him that he had purchased the drive on E-bay from appellant.
 {¶ 3} Detective Shuemake then contacted the Lompoc police department, who in turn retrieved the hard drive from Suzuki. The Lompoc police viewed the images on the drive, then shipped the drive to Detective Shuemake via Federal Express.
 {¶ 4} After personally viewing the images, Detective Shuemake obtained a warrant to search appellant's home on Jackson Lane in Middletown. Upon executing the warrant, the Middletown police seized a computer and various computer-related devices. Appellant was present during the search, but was not placed under arrest at that time. Immediately following execution of the warrant, appellant was invited, and chose to proceed to the Middletown police station to discuss the reason for the search with Detective Shuemake.
 {¶ 5} At the station house, appellant gave a videotaped statement in which he admitted viewing images of females under the age of 18 in a state of nudity. He was permitted to leave the station house after the interview, but was subsequently charged in a 52 count indictment when a search of the computer seized from his home revealed that illicit images were on its hard drive.
 {¶ 6} Appellant filed a motion to suppress, challenging the reasonableness of the search of his home and the voluntariness of the statement he gave at the station house. The motion was denied and the case eventually proceeded to trial before a jury on August 11-13, 2003.
 {¶ 7} At trial, the state's evidence consisted primarily of testimony by Detective Shuemake and 26 computer printout images obtained from appellant's hard drive. The images depict children, pubescent and prepubescent, in various states of nudity and engaging in sexual activity.
 {¶ 8} The jury found appellant guilty of all 52 counts and on October 9, 2003, the trial court sentenced him to serve an aggregate prison term of nine years and seven months.
 {¶ 9} This appeal followed, in which appellant raises 12 assignments of error.
 {¶ 10} Assignment of Error No. 1:
 {¶ 11} "Appellant's convictions were against the sufficiency and/or the manifest weight of the evidence."
 {¶ 12} In his first assignment of error, appellant appears to challenge either, or both, the sufficiency of the state's evidence, and the manifest weight of the evidence. Upon reviewing the actual issues raised under this alleged error, however, we find that appellant's actual challenge is to the sufficiency of the state's evidence. Therefore, we will consider appellant's first assignment of error accordingly.
 {¶ 13} In reviewing a record for sufficiency of evidence to support a conviction, "[t]he relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." State v. Jenks (1991), 61 Ohio St.3d 259, paragraph two of the syllabus.
 {¶ 14} Appellant was convicted of 26 counts of pandering sexually oriented material involving a minor, in violation of R.C. 2907.322(A)(1) and (A)(5).
 {¶ 15} R.C. 2907.322(A)(1) provides: "No person, with knowledge of the character of the material or performance involved, shall * * * [c]reate, record, photograph, film, develop, reproduce, or publish any material that shows a minor participating or engaging in sexual activity * * *."
 {¶ 16} R.C. 2907.322(A)(5) provides: "No person, with knowledge of the character of the material or performance involved, shall * * * [k]nowingly solicit, receive, purchase, exchange, possess, or control any material that shows a minor participating or engaging in sexual activity * * *."
 {¶ 17} Appellant was also convicted of 26 counts of illegal use of a minor in nudity-oriented material, in violation of R.C. 2907.323(A)(1) and (A)(3).
 {¶ 18} R.C. 2907.323(A)(1) provides: "No person shall * * * [p]hotograph any minor who is not the person's child or ward in a state of nudity, or create, direct, produce, or transfer any material or performance that shows the minor in a state of nudity * * *."
 {¶ 19} R.C. 2907.323(A)(3) provides: "No person shall * * * [p]ossess or view any material or performance that shows a minor who is not the person's child or ward in a state of nudity * * *."
 {¶ 20} As is evident from a plain reading of each provision, the state must prove that a minor, defined by R.C. 2907.01(M) as a person under the age of 18, was involved in what was produced, possessed, photographed, or viewed. In addition, as appellant notes, case law culminating in Ashcroftv. Free Speech Coalition (2002), 535 U.S. 234, 122 S.Ct. 1389, and case law subsequent to Ashcroft, requires the minors depicted to be actual children, and not merely virtual, or computer-generated, images of children. See, e.g., State v. Eichorn (June 27, 2003), Morrow App. No. 02 CA 953, 2003-Ohio-3415.
 {¶ 21} Appellant seems to argue in this assignment of error that the state failed to prove, by credible expert testimony, that the images in this case were of actual minors.
 {¶ 22} Initially, we note that we have previously rejected a nearly identical argument in State v. Gann, 154 Ohio App.3d 170, 2003-Ohio-4000. In Gann, the defendant argued on appeal that the state failed to produce any evidence that the illegal images in that case were of actual children. We concluded in Gann that the images were capable of speaking for themselves. Id. at ¶ 42. Despite his argument on this issue, appellant has not convinced us of the need to modify our position inGann.
 {¶ 23} In Ashcroft, the Supreme Court recognized that the exploitation of actual children is still a necessary part of the creation of child pornography. "If virtual images were identical to illegal child pornography, the illegal images would be driven from the market by the indistinguishable substitutes. Few pornographers would risk prosecution by abusing real children if fictional, computerized images would suffice." 535 U.S. at 354; 122 S.Ct. at 1404.
 {¶ 24} Furthermore, nothing in the record indicates appellant offered any evidence to challenge the proposition that the images submitted in this case were of actual children. We have also examined the images in this case ourselves, and while we recognize that computer technology is constantly advancing, we are not persuaded that juries are no longer able to distinguish between a computer generated image and an image of an actual child.
 {¶ 25} Additionally, we know of no other court that has concluded such proof must be made by an expert witness. To the contrary, several Circuit Courts of Appeal to consider the issue have concluded experts are not necessary to show images are of actual children. See United States v.Farrelly (C.A.6, 2004), 389 F.3d 649; United States v. Kimler (C.A.10, 2003), 335 F.3d 1132, 1142; United States v. Hall (C.A.11, 2002),312 F.3d 1250, 1260; United States v. Deaton (C.A.8, 1999), 328 F.3d 454,455.
 {¶ 26} We agree with the Circuit Courts of Appeal and conclude that "[j]uries are still capable of distinguishing between real and virtual images," Farrelly, 389 F.3d at 655, and that expert testimony is not required to prove illicit images are of real, not virtual, children. "The question of whether the images are virtual or real is one of fact, to be determined by evidence about which argument can be made to the jury." Id. at 654. Consequently, appellant's argument is not well-taken.
 {¶ 27} To the extent appellant has raised other various issues under this assignment of error, we have considered them, and find them to be without merit. Accordingly, appellant's first assignment of error is overruled.
 {¶ 28} Assignment of Error No. 2:
 {¶ 29} "The trial court erred in refusing to suppress evidence derived from an illegal search."
 {¶ 30} Appellant argues in his second assignment of error that the affidavit in support of the warrant to search his house was facially invalid because it failed to state a factual basis for probable cause.
 {¶ 31} The Fourth Amendment to the U.S. Constitution requires probable cause before a warrant to search a house may issue from a state magistrate. In addition, an affidavit in support of a search warrant must "state the factual basis for the affiant's belief that such property is there located." Crim.R. 41(C).
 {¶ 32} "In determining the sufficiency of probable cause in an affidavit submitted in support of a search warrant, `the task of the issuing magistrate is simply to make a practical, commonsense decision whether, given all the circumstances set forth in the affidavit before him, including the veracity and basis of knowledge of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found at a particular place.'" State v.George (1989), 45 Ohio St.3d 325, paragraph one of the syllabus, quotingIllinois v. Gates (1983), 462 U.S. 213, 238-239, 103 S.Ct. 2317, 2332.
 {¶ 33} When reviewing an issuing magistrate's decision to issue a warrant, an appellate court should not apply the de novo standard of review. Rather, the determination of the magistrate should be given great deference. George, 45 Ohio St.3d 325, paragraph two of the syllabus. We begin, therefore, by reviewing the contents of the affidavit, bearing in mind that the magistrate's initial decision to issue the warrant should be given substantial consideration by this court. The affidavit states, in relevant part, the following:
 {¶ 34} Shuemake received information from Mark Suzuki, a resident of Lompoc, California, that he had purchased a hard drive from Jonathan Steele of Middletown, Ohio through the E-Bay web site. Shuemake learned that Mr. Suzuki accessed the drive and found "significant amount[s] of children engaged in sexual conduct and or contact with each other and adults." Shuemake then contacted the Lompoc police, who viewed the images and found "that they did contain images of children engaged in sexual activity with each other and adults * * *."
 {¶ 35} The Lompoc police shipped the hard drive by Federal Express to Shuemake and "[t]he Federal Express box contained the original box that was sent to Mark Suzuki, [and] that [box] had a return address of [appellant's home]."
 {¶ 36} "Affiant also viewed the hard drive * * *" and found that it contained "a significant amount of images involving children engaged in sexual activity." "Affiant also found on the hard drive a document that was authored by Jonathon [sic] Steele."
 {¶ 37} "Affiant learned * * * the user of the hard drive had a user name of YODATHEJEDIMACSTER," and that "Jonathon [sic] Steele is an avid follower of the Star Wars movies."
 {¶ 38} We find the foregoing to be a sufficient basis for the magistrate's decision to issue the warrant. The affidavit establishes that appellant, a resident of Middletown, Ohio, owned a hard drive that he sold to a resident of California. The affidavit also establishes that the basis of that knowledge was the testimony of Mark Suzuki, an unpaid, concerned citizen.
 {¶ 39} The affidavit reveals that Suzuki transferred the hard drive to the Lompoc police, who then transferred it to Detective Shuemake. Detective Shuemake then personally verified that it contained images of children engaging in sexual activity.
 {¶ 40} The affidavit also reveals that the box Suzuki received the hard drive in had a return address for appellant's home in Middletown. A reasonable inference from a return address, though certainly not always the case, is that items received in the mail came from that address. Thus, Detective Shuemake reasonably concluded that the return address on the box was the same place from which the hard drive was mailed.
 {¶ 41} Correspondingly, just as Detective Shuemake made a reasonable inference with respect to the return address, so too did the magistrate. When issuing a warrant, a magistrate is given license to draw reasonable inferences concerning where the evidence referred to in an affidavit is likely to be kept, taking into account, the nature of the evidence and the nature of the offense. State v. O'Connor (Aug. 12, 2002), Butler App. No. CA2001-08-195. The return address and the nature of the evidence the police were searching for in this case permitted the magistrate to reasonably infer that there was a fair probability child pornography would be found in appellant's residence. Appellant needed a secure place to keep the material and have access to it during his leisure time. See id. at 7.
 {¶ 42} Appellant contends that in order to be valid, the affidavit needed to have either the images appended to it or contain a reasonably specific description of the pictures. In support of this argument, appellant cites to United States v. Brunette (C.A.1, 2001), 256 F.3d 14. We find appellant's argument unpersuasive for two reasons. First, the decisions of federal courts constitute persuasive authority only, and are not binding on this court. State v. Burnett, 93 Ohio St.3d 419, 422-424,2001-Ohio-1581. Second, we find Brunette distinguishable from the case at bar.
 {¶ 43} In Brunette, the affiant averred that all of the images in question "appeared to be within the statutory definition of child pornography, specifically, `photographs of a prepubescent boy lasciviously displaying his genitals.'" In the case at bar, Detective Shuemake averred that the hard drive contained a significant amount of "images involving children engaged in sexual activity." Whether photographs of a prepubescent boy's genitals are lasciviously displayed is certainly open to subjective interpretation, and would reasonably require a magistrate to view the photographs and make that determination independently. Whether an image is obscene or lascivious is a highly subjective question that involves imprecise value judgments. Whether images depict children engaged in sexual activity, however, is a significantly easier question.
 {¶ 44} While we find Detective Shuemake's description less than ideal, we conclude that describing the images as depicting "children engaged in sexual activity" is a reasonably specific description of the pictures for Fourth Amendment purposes. Cf. United States v. Smith
(C.A.9, 1986), 795 F.2d 841 (upholding a warrant issued by a magistrate who did not view the images on the basis that the photos depicted children engaged in "sexually explicit conduct").
 {¶ 45} Appellant also contends that someone could have put the images on Mr. Suzuki's computer without his knowledge. According to appellant, the images could have been downloaded at another residence or business, by a former hard drive owner, a decade before the search warrant application was presented. Furthermore, the document found on the hard drive that was supposedly authored by him could have been put there by anyone. Finally, appellant, argues the affidavit offered no evidence that appellant, or anyone in his household, currently owned a computer, or that appellant was an active trader in pornography.
 {¶ 46} Appellant's arguments, in essence, challenge the certainty of finding illicit images at appellant's home. However, it is not necessary that an affidavit demonstrate with certainty, or even an overwhelming probability, that evidence of a crime will be found at a particular place. All that is required is a fair probability. See Gates. We find, for the reasons stated above, that a fair probability did exist that evidence of child pornography would be found at appellant's residence, appellant's contentions notwithstanding.
 {¶ 47} Finally, appellant calls our attention to Detective Shuemake's assertion that appellant was YODATHEJEDIMACSTER, an assertion that the record reveals was incorrect, and to the fact that Detective Shuemake failed to give the underlying factual basis for how he came to know appellant was an avid follower of Star Wars movies. Without a factual basis for how Detective Shuemake learned this information, appellant argues, the issuing magistrate could not have made a reasonable determination that probable cause existed.
 {¶ 48} We find that these assertions in the affidavit were mere surplusage. Misstatements or inaccuracies in an affidavit generally do not invalidate an otherwise valid search warrant unless the defendant establishes by a preponderance of the evidence that the affiant made the statement intentionally or with reckless disregard for the truth. Statev. Freeman (2000), 138 Ohio App.3d 408, 425. Furthermore, if the misstatements or inaccuracies are not material to a finding of probable cause to search, the warrant remains valid. Id. Appellant has not demonstrated that any misstatements or inaccuracies were intentionally or recklessly made, and the challenged information is not material to a finding of probable cause. Accordingly, this argument is not well-taken, and appellant's second assignment of error is overruled.
 {¶ 49} Assignment of Error No. 3:
 {¶ 50} "The trial court erred in refusing to suppress statements gained in violation of appellant's constitutional rights."
 {¶ 51} In his third assignment of error, appellant contends the trial court erred in admitting into evidence his videotaped statement to Detective Shuemake.
 {¶ 52} In order to be admissible, confessions must be freely and voluntarily given. Colorado v. Connelly (1986), 479 U.S. 157, 107 S.Ct. 515. Under circumstances that constitute custodial interrogation, they must also be made subsequent to the administering of Miranda warnings. SeeMiranda v. Arizona (1966), 384 U.S. 436, 86 S.Ct. 1602; State v.Williams, 99 Ohio St.3d 493, 2003-Ohio-4396. Police are not required to administer Miranda warnings to everyone they question, however, and they need not be given simply because the questioning takes place at a station house. State v. Lynch, 98 Ohio St.3d 514, 521, 2003-Ohio-2284, ¶ 47.
 {¶ 53} Appellant initially responded to questioning that took place at his home while the police were executing the search warrant. Appellant testified at the hearing on the motion to suppress that he was not free to leave his house during the search and that he was followed to the bathroom. He also testified that he was told if he did not come down to the station and make a voluntary statement, the police would drag him off in handcuffs.
 {¶ 54} Detective Shuemake also testified at the hearing, and he denied that appellant was threatened or that he was not free to leave. He also denied making promises or threats to appellant in exchange for a statement at the station house. According to Detective Shuemake, appellant was free to leave at any time and voluntarily chose to come to the station.
 {¶ 55} In essence, appellant's challenge goes to the trial court's findings of fact and credibility. When reviewing a trial court's findings of fact on a motion to suppress, an appellate court must determine whether those findings are against the manifest weight of the evidence.State v. Fanning (1982), 1 Ohio St.3d 19. We must accept the trial court's findings of fact as long as they are supported by competent, credible evidence. State v. Burnside, 100 Ohio St.3d 152, 155,2003-Ohio-5372, ¶ 8.
 {¶ 56} The trial court stated on the record that it found appellant's testimony to be not credible, and a trial court, not an appellate court, is in the best position to evaluate testimony and determine the credibility of witnesses. State v. DeHass (1967), 10 Ohio St.2d 230. "[W]hen conflicting evidence is presented at trial, a conviction is not against the manifest weight of the evidence simply because the [trier of fact] believed the prosecution testimony." State v. Guzzo (Sept. 20, 2004), Butler App. No. CA2003-09-232, 2004-Ohio-4979, ¶ 13.
 {¶ 57} Furthermore, in the videotaped interview at the station house, Detective Shuemake begins by asking appellant if he is there voluntarily and whether he knows that he is free to leave at any time. Detective Shuemake informed appellant of his right to remain silent and his right to terminate the interview at any time. Appellant was also told that he would not be placed under arrest and he read and signed a Miranda waiver card.
 {¶ 58} In light of the foregoing, we cannot conclude that the trial court erred in denying appellant's motion to suppress statements obtained from him. The record reveals his statements were freely given, and the trial court's findings of fact underlying the denial of the motion are supported by competent, credible evidence. Accordingly, appellant's third assignment of error is overruled.
 {¶ 59} Assignment of Error No. 4:
 {¶ 60} "Prosecutorial misconduct deprived appellant of a fair trial."
 {¶ 61} In his fourth assignment of error, appellant argues that the prosecutor made improper comments during opening statements and closing arguments that unfairly prejudiced him in the eyes of the jury.
 {¶ 62} A prosecutor may not make excessively emotional arguments tending to inflame the jury's sensibilities. State v. Tibbetts,92 Ohio St.3d 146, 168, 2001-Ohio-132. It is also the duty of a prosecutor to avoid efforts to obtain a conviction by going beyond the evidence presented to the jury. State v. Smith (1984), 14 Ohio St.3d 13,14.
 {¶ 63} Upon review, the test for prosecutorial misconduct is "whether * * * remarks [made by the prosecutor] were improper and, if so, whether they prejudicially affected the accused's substantial rights." State v.Lynch, 98 Ohio St.3d 514, 537, 2003-Ohio-2284, ¶ 145. The effect of the alleged misconduct must also be judged in the context of the entire trial, and not treated as an isolated incident in an otherwise properly tried case. State v. Poole, 116 Ohio App.3d 513, 524.
 {¶ 64} Furthermore, "[t]he touchstone of [the] analysis is the fairness of the trial, not the culpability of the prosecutor." Lynch at ¶ 145. If the prosecutor makes an improper comment, it must be clear beyond a reasonable doubt that the jury would have found the defendant guilty in the absence of the comment. State v. Treesh, 90 Ohio St.3d 460,2001-Ohio-4.
 {¶ 65} We also note in the case at bar that objections to the conduct of the prosecutor were not raised at trial. Thus, we review for plain error. To warrant reversal under a review for plain error, a correction must be necessary to prevent a miscarriage of justice that would have a material adverse affect upon the "character and public confidence in judicial proceedings." Schade v. Carnegie Body Co. (1982),70 Ohio St.2d 207, 209.
 {¶ 66} Appellant first argues that the prosecutor made inflammatory and prejudicial remarks during the opening statement phase of the trial. The prosecutor informed the jury that during the interview between Detective Shuemake and appellant, Detective Shuemake asked appellant "what made him store these pictures." According to the prosecutor, appellant responded: "fascination in little children having sex with each other and adults."
 {¶ 67} We have carefully reviewed the videotape of appellant's conversation with Detective Shuemake and agree that this is not an accurate characterization of appellant's statements. During the interview, appellant seems to admit to having a fascination with older teens, not little children.[1] Viewed in the context of the entire proceedings, however, we do not find the misstatement fostered a miscarriage of justice.
 {¶ 68} The trial judge properly instructed the jury that opening statements are argument and not evidence. Additionally, the statement went to appellant's motive for committing the crimes, not any of the elements of the crimes. There was more than sufficient evidence submitted at trial to establish that appellant knowingly possessed and transferred material displaying minors in states of nudity and engaging in sexual activity. The prosecutor's comment did not further the establishment of any fact necessary to appellant's convictions. Furthermore, the jury viewed the tape, and it was admitted into evidence. Thus, the jury saw firsthand that the comment of the prosecutor was inaccurate. Consequently, this argument is not well-taken.
 {¶ 69} Appellant next contends that the prosecutor made reference to material outside the record that unfairly prejudiced him in the eyes of the jury. According to appellant, the prosecutor improperly commented to the jury that hundreds of pictures were found on appellant's computer. At trial, however, Detective Shuemake testified for the state that he found "several 100 photographs of nude children engaged in sexual conduct as well as posing in sexually oriented positions." Thus, we fail to see how the prosecutor's statement was a reference to material outside the record. Consequently, this contention is not welltaken.
 {¶ 70} Appellant also seems to argue that commenting on the number of images found on his computer was entirely irrelevant, unfairly prejudicial, and a violation of his substantive due process rights in that he was denied the right to defend against charges not included in the indictment. While it would seem that these are alleging the admission of improper evidence, or a violation of appellant's constitutional right to be indicted by a grand jury, we nevertheless interpret them as an attempt by appellant to show that he was prejudiced by the prosecutor's reference to the quantity of images found. In any event, we have already stated that the evidence admitted at trial supports the prosecutor's reference to the number of images. We therefore find this line of argument to be without merit.
 {¶ 71} Appellant has not demonstrated that any statements made by the prosecutor in the presence of the jury created such a miscarriage of justice that the public's confidence in the integrity of the judicial system has been compromised as a result of his conviction. Accordingly, the fourth assignment of error is overruled.
 {¶ 72} Assignment of Error No. 5:
 {¶ 73} "The trial court erred in failing to protect appellant's right to a panel of impartial jurors."
 {¶ 74} In his fifth assignment of error, appellant contends that conversations between a courtroom spectator and a juror improperly influenced the jury, and that the trial court, when it became aware of the conversations, should have declared a mistrial.
 {¶ 75} In cases involving outside influences on jurors, trial courts are granted broad discretion in determining whether to declare a mistrial and the complaining party must show actual bias to one or more of the jurors resulted from the communication. State v. Herring,94 Ohio St.3d 246, 259, 2002-Ohio-796. A trial court should make its decision based upon how the jury interprets, and is expected to react, to the outside communication. Id. If the trial court determines (1) that improper communication took place and (2) that the improper communication materially affected the defendant's substantial rights, the court should grant a new trial. See State v. Taylor (1991), 73 Ohio App.3d 827, 833.
 {¶ 76} In the case at bar, it was brought to the court's attention that one of the jurors, Stephanie Plumb, had engaged in conversation with a spectator who was regularly attending the proceedings. The spectator, Donna Wyatt, was the former motherin-law of appellant's wife. The court questioned Wyatt and discovered that while in the restroom during a break in the proceedings, she mentioned to Plumb that her son had an interest in the case. Other small talk took place between the two, but the conversation abruptly ended when the topic turned to children.
 {¶ 77} The court then made a determination to voir dire each juror separately in order to ascertain the extent and content of the conversations with, and about, Wyatt. Through this process, the court also became aware that on another occasion, during a lunch break, Plumb had engaged in a conversation with two other jurors in which the identity of Wyatt was speculated upon.
 {¶ 78} After extensive inquiry by the court, Plumb admitted that she thought Wyatt was a relative of someone connected to the trial, possibly a grandmother. Consequently, the trial court stated its concern that Plumb could have inferred that there were children living in appellant's house whose welfare depended upon the outcome of the case. Exercising caution, the trial court dismissed Plumb as a juror.
 {¶ 79} We find no abuse of discretion in the trial court's decision to dismiss Plumb, but not the entire jury. Only Plumb engaged in conversation with Wyatt, and the two other jurors who ate lunch with Plumb were merely aware that there was speculation as to who Wyatt might be. Both indicated that any references to Wyatt during lunch were made only in passing, and that she was not really even a topic of conversation. The remaining nine jurors essentially testified that they had no knowledge of anything concerning the conversations with Wyatt.
 {¶ 80} The entire misconduct voir dire was done discreetly, during breaks in the proceedings, with minimal disruption to the regular routine of the jurors, and in such a way as to not create a problem where one was not yet known to exist. During the individual examinations, the court allowed the prosecutor and appellant's attorney the opportunity to examine each juror. The trial court also cautioned the individual jurors not to discuss the nature of the court's inquiry with the other members of the jury and cautioned the jury to consider only evidence submitted to it in reaching its decision. Moreover, the jury was already aware that there was an eight year old living in appellant's house through the testimony of appellant's wife.
 {¶ 81} Furthermore, every juror, including Plumb, indicated to the court that they still possessed the ability to be impartial in deciding the case. A trial court may rely upon a juror's testimony as a basis for finding that his or her impartiality was not affected by an outside influence. Herring, 94 Ohio St.3d at 259. We should assume, moreover, unless an appellant can demonstrate otherwise, that jurors follow their oaths and deliberate only upon the evidence adduced at trial. State v.Durr (1991), 58 Ohio St.3d 86, 91. Throughout the trial, the trial court in this case repeatedly admonished the jury concerning its duty to not discuss or prejudge the case until deliberations had commenced.
 {¶ 82} In sum, "[c]onversations by a third person with a juror during the progress of a trial for the purpose of influencing the verdict may invalidate the verdict, but where there is nothing in the record to demonstrate that the decision might have been influenced by such a conversation, the refusal of the trial court to grant a new trial will not be disturbed." Taylor, 73 Ohio App.3d at 832.
 {¶ 83} Appellant has failed to demonstrate how the trial court's handling of one juror's contact with a spectator in the courtroom was an abuse of discretion, or how the court's decision to proceed with the already empanelled jury materially affected his substantive right to a fair and impartial jury. Accordingly, his fifth assignment of error is overruled.
 {¶ 84} Assignment of Error No. 6:
 {¶ 85} "Appellant received ineffective assistance of counsel."
 {¶ 86} In order to prevail on a claim of ineffective assistance of counsel, an appellant must satisfy two conditions. First, there must be a showing of a substantial violation of one of the duties a defense counsel owes to a client. To demonstrate this, a convicted defendant "must show that counsel's representation fell below an objective standard of reasonableness." Strickland v. Washington (1984), 104 S.Ct. 2052, 2064,466 U.S. 668.
 {¶ 87} Furthermore, because this objective standard allows for many and various ways that counsel can provide effective assistance, "[a] court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance * * *." Id. at 2065. Many choices are strategic, and we presume a licensed attorney has reasons for pursuing or not pursuing a seemingly proper course of action. See State v. Bell, Butler App. No. CA2001-08-197, 2002-Ohio-1341.
 {¶ 88} Second, an appellant must show that the defense was prejudiced by counsel's ineffectiveness. In other words, "[a]n error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." Strickland at 2066. An appellant must show "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 2068.
 {¶ 89} When reviewing whether an appellant has met this burden, we need not determine whether counsel's performance was deficient before examining whether there was prejudice to the defense. If it is clear that the defense was not prejudiced by a claimed error, a court should dispose of an ineffectiveness claim on the basis of lack of sufficient prejudice. Id. at 2069; State v. Bradley (1989), 42 Ohio St.3d 136, 143.
 {¶ 90} With these rules and principles before us, we turn now to the facts of this case. Appellant argues on appeal that trial counsel appeared inadequately prepared and failed to zealously perform intelligently and well. He also claims trial counsel seemed confused about the evidence and inadequately familiar with computer technology. In support of these claims, appellant points to specific comments made by trial counsel.
 {¶ 91} While cross-examining a witness, trial counsel stated: "I'm not being a smart aleck. I'm not the greatest computer guy in the world." At another point, trial counsel stated: "I'm not very good at this. Anything you can do to help, I'll take." Finally, appellant notes trial counsel's apparent concern with using "the wrong words."
 {¶ 92} Initially, we note that it is virtually impossible for a reviewing court to evaluate how counsel "seemed" or "appeared." We have reviewed the record, however, and after considering the foregoing statements in their context, we disagree with appellant's assessment. We view trial counsel's statements as nothing more than a cross-examination technique in which counsel attempted to disarm the witness by feigning ignorance. Accordingly, appellant's claim of ineffective assistance on the basis that trial counsel "appeared" or "seemed" unprepared is not well-taken.
 {¶ 93} Appellant also contends that expert assistance was reasonably necessary in this case and that counsel was ineffective for failing to pursue the defense's motion for an expert computer analysis. At the motion to suppress hearing, the defense requested an independent forensic analysis of the computer seized from appellant's home. The court expressed concern over delaying the trial, but withheld overruling the motion at that time. For reasons not apparent in the record, appellant eventually withdrew this motion.
 {¶ 94} Appellant's trial took place on August 11, 2003, over nine months from the date of the initial request. Nothing in the record indicates the defense was prohibited from obtaining an expert analysis during that time. Thus, appellant seemingly had ample time to pursue the evaluation but chose not to do so. Appellant also admits on appeal that a defense expert appeared at trial but did not testify. Given these circumstances, and absent evidence in the record to the contrary, we conclude that any choice to forego an expert evaluation, or expert testimony, was strategic, falling within the wide range of acceptable performance by defense counsel.
 {¶ 95} Moreover, appellant has not shown how an expert would have affected the outcome of his proceedings. Appellant has not shown prejudice.
 {¶ 96} Appellant next contends that trial counsel was ineffective because he failed to file a motion in limine to preclude testimony about the number of images found on one of the hard drives.
 {¶ 97} As appellant notes, the number of images went to the knowledge element of the crimes with which appellant was charged. According to appellant, a jury might have believed appellant was unaware of 26 images on his computer, but not hundreds. While we agree that it is within the realm of possibility that the jury might have believed appellant was unaware of 26 images, appellant has failed to demonstrate a reasonable probability of such a belief.
 {¶ 98} Enough evidence was already admitted to establish appellant was aware of the nature of the images. Testimony established that he knowingly subscribed to newsgroups with titles such as "pictures-kids," "pedophilia-girls," and "sexpreteens." Testimony also established that appellant knowingly directed the images to be transferred to specific folders on his computer. Moreover, appellant admitted in his videotaped statement to Detective Shuemake that he viewed and downloaded images of teenage girls. Thus, even without testimony that the number of images was several hundred, not 26, we do not find there is a reasonable probability the jury would have believed appellant was unaware of the nature of the images stored on his computer.
 {¶ 99} Appellant next contends that counsel was ineffective because he failed to object to leading questions, testimony lacking a foundation, the use of previously outlined arguments by the prosecutor, and prejudicial comments by the prosecutor during opening statements and closing arguments.
 {¶ 100} In addressing these contentions we note that "[c]ounsel is not ineffective for choosing, for tactical reasons, not to pursue every possible trial objection." State v. Tibbetts, 92 Ohio St.3d 146, 167-168,2001-Ohio-132. "Objections tend to disrupt the flow of a trial and are considered technical and bothersome by a jury." State v. Hill,75 Ohio St.3d 195, 211, 1996-Ohio-222.
 {¶ 101} Accordingly, the absence of objections when the prosecutor posed leading questions, made use of previously outlined arguments, and any alleged prejudicial comments by the prosecutor during the opening and closing phases of the trial, can be viewed as strategic choices by counsel. Furthermore, appellant has not shown how there is a reasonable probability the result of his proceedings would have been different had counsel made the various objections to statements and evidence.
 {¶ 102} Appellant next contends trial counsel was ineffective for failing to object to a comment by the prosecutor at the sentencing hearing. The prosecutor commented that appellant was offered a plea to fewer counts prior to the trial, and that what led up to the sentencing hearing would not have been necessary if appellant had accepted that plea.
 {¶ 103} While this comment was objectionable, we find nothing in the record indicating that it influenced the trial court in its sentencing decision. Absent anything in the record indicating otherwise, we are unwilling to assume that a judge would be prejudiced by a single isolated comment from an overzealous prosecutor. Consequently, this contention is not well-taken.
 {¶ 104} Finally, appellant contends counsel was ineffective because he failed to object to a missing chain of evidence for the hard drives from California and appellant's home, and the images discovered thereon. Our review of the record, however, reveals the California hard drive was never offered into evidence, and as we discuss in the seventh assignment of error below, an objection to the chain of custody for the hard drive seized from appellant's home would have failed. Therefore, this argument is also not well-taken.
 {¶ 105} Appellant's sixth assignment of error is overruled.
 {¶ 106} Assignment of Error No. 7:
 {¶ 107} "Appellant was prejudiced by the admission of evidence without a proper chain of custody."
 {¶ 108} Appellant contends in his seventh assignment of error that the trial court erred in admitting the hard drive seized from appellant's home, and the computer images obtained from it, because the state failed to establish a proper chain of custody.
 {¶ 109} Establishing a proper chain of custody for evidence sought to be admitted at trial is part of the authentication and identification requirement set forth in Evid.R. 901. State v. Lamberson (Mar. 19, 2001), Madison App. No. CA2000-04-012. Evid.R. 901(A) states: "The requirement of authentication or identification as a condition precedent to admissibility is satisfied by evidence sufficient to support a finding that [a] matter in question is what its proponent claims."
 {¶ 110} Evid.R. 901(B)(1) provides that the authentication requirement may be satisfied by the testimony of a witness with knowledge. Pursuant to that provision, Detective Shuemake testified at trial that a hard drive was seized from appellant's home. He testified that at some point after the seizure he viewed images of child pornography on that drive, and that a hard drive identified as State's Exhibit 6 at trial was the same hard drive seized from appellant's home.
 {¶ 111} Troy Anderton, a programmer analyst, also testified for the state concerning the hard drive taken from appellant's home. He stated that he conducted a search on a hard drive identified as State's Exhibit 6 at trial and discovered pornographic depictions of children that matched the images introduced by the state at trial.
 {¶ 112} Thus, testimonial evidence at trial established the following: A hard drive, identified by Detective Shuemake as the same drive offered as State's Exhibit 6, was seized during the search of appellant's home in Middletown. At some point between that seizure and trial, Anderton searched a drive that he also identified as the same drive offered as State's Exhibit 6. Finally, both Detective Shuemake and Anderton testified that they viewed images from State's Exhibit 6 that were identical to images submitted by the state at trial. We find the foregoing testimony sufficient to establish the chain of custody requirement of Evid.R. 901.
 {¶ 113} Appellant contends the state failed to establish at trial what happened to the hard drive once it was taken from appellant's home, and failed to establish where the actual search of the drive took place. Accordingly, appellant argues, the hard drive might have been tampered with between the initial seizure and trial.
 {¶ 114} While we recognize it is within the realm of possibility that the hard drive seized from appellant's home was tampered with, the state need only establish that it is reasonable to conclude that substitution, alteration or tampering did not occur. See State v. Moore (1973),47 Ohio App.2d 181. Moreover, breaks in the chain of custody generally go to the weight of the evidence, not its admissibility. See State v.Brown (1995), 107 Ohio App.3d 194, 200.
 {¶ 115} We also note that the "sufficient to support a finding standard" of Evid.R. 901 is not rigorous, and the threshold of admissibility articulated in it is low. State v. Easter (1991),75 Ohio App.3d 22, 25. The evidence need only be sufficient to afford a rational basis for a jury decision that the evidence is what its proponent claims it to be. State ex rel. Montgomery v. Villa (1995),191 Ohio App.3d 478, 484-485. Accordingly, conclusive evidence as to authenticity and identification need not be presented to justify allowing evidence to reach the jury.
 {¶ 116} Through the testimony of Detective Shuemake and Troy Anderton, the state created a rational basis for the jury to conclude that the hard drive introduced at trial was identical to the hard drive taken from appellant's home. Appellant offered no evidence at trial to rebut that basis. Consequently, his argument is not well-taken.
 {¶ 117} To the extent appellant appears to raise other various issues under this assignment of error, we have considered them and find them to be without merit. Accordingly, the seventh assignment of error is overruled.
 {¶ 118} Assignment of Error No. 8:
 {¶ 119} "The trial court erred in permitting jurors to take notes in conjunction with a faulty jury instruction."
 {¶ 120} In his eighth assignment of error appellant seems to argue, relying on Corbin v. City of Cleveland (1944), 144 Ohio St. 32, and Statev. Shifflett (Nov. 12, 1987), Wayne App. No. 86CR169, that note-taking by jurors is not permitted in Ohio. However, in State v. Waddell,75 Ohio St.3d 163, 1996-Ohio-100, paragraph one of the syllabus, the Court expressly held that "[a] trial court has the discretion to permit or prohibit notetaking by jurors."
 {¶ 121} Appellant also contends that the trial court gave a faulty instruction in conjunction with granting the jurors permission to take notes. When permitting note-taking, "the trial court should * * * instruct the jurors that they are not required to take notes." Id., paragraph two of the syllabus. "The trial court should [also] caution the jurors that their notes are to be confidential, that note-taking should not divert their attention from hearing the evidence in the case, that a juror who has not taken notes should not be influenced by those jurors who decide to take notes, and that notes taken by jurors are to be used solely as memory aids and should not be allowed to take precedence over their independent memory of facts." Id., paragraph three of the syllabus.
 {¶ 122} Prior to opening statements, the trial court delivered the following instructions to the jury concerning note-taking: "You're permitted but not required to take notes during the trial. Taking notes is entirely a matter of personal choice to each individual juror. The fact that notes taken by a juror support his or her recollection in no way makes a juror's memory any more reliable than that of a juror who does not take notes. Ladies and gentlemen, do not let the taking of notes divert your attention to what is being said or what is taking place in this courtroom."
 {¶ 123} While the trial court's instructions do not track, word for word, those articulated in Waddell, nothing in the record indicates that appellant suffered prejudice thereby. Furthermore, at trial appellant failed to object to the note-taking or the instructions, denying the trial court an opportunity to correct any error, and waiving all but plain error. State v. Moreland (1990), 50 Ohio St.3d 58, 62; Crim.R. 30(A); Crim.R. 52(B).
 {¶ 124} In order to warrant reversal under a review for plain error, appellant "must establish that the outcome of the trial would clearly have been different but for the trial court's allegedly improper actions."Moreland at 63. Appellant has not made us aware of any facts or circumstances, and nothing in the record convinces us, that the outcome of his trial clearly would have been different had the jury refrained from taking notes, and had the trial court delivered the instructions set forth in Waddell verbatim. Accordingly, appellant's eighth assignment of error is overruled.
 {¶ 125} Assignment of Error No. 9:
 {¶ 126} "The trial court erred in ordering forfeiture of property in violation of relevant statutes."
 {¶ 127} The record indicates that the trial court granted the state's request to order forfeiture of a computer and monitor that were seized when the search warrant was executed upon appellant's home. Numerous items seized during the search, such as a printer, keyboard, and storage discs, were returned, but the computer and monitor were deemed contraband and forfeited in accordance with R.C. 2933.42, 2933.43, and2901.01(A)(13)(j).
 {¶ 128} Under the heading for this assignment of error, appellant cites to a portion of the sentencing hearing transcript and asserts that "[t]he court ordered forfeiture of his property, over objection, and in contravention to R.C. 2933.45." Immediately following this assertion, and in an apparent attempt to incorporate by reference the arguments and rules of law contained therein, is a cite to State v. Baumholtz (1990),50 Ohio St.3d 198. Curiously, appellant's claim ends there, resulting in an argument section for this assignment, including citations, that comprises less than two full lines of text.
 {¶ 129} Appellant has claimed on appeal that the courtordered forfeiture is in error. He does not tell us, however, how the trial court erred, or why it was error to grant the state's request to retain his computer and monitor. He has claimed that the forfeiture was contrary to the requirements of R.C. 2933.45. This code subsection, however, does not exist. The Baumholtz opinion does exist, and it does discuss forfeiture, but appellant has failed to inform us as to how that opinion is applicable to the case at bar.
 {¶ 130} App.R. 16(A), which governs the contents of appellate briefs, states that "[t]he appellant shall include in its brief * * * [a]nargument containing the contentions of the appellant with respect to each assignment of error presented for review and the reasons in support ofthe contentions, with citations to the authorities, statutes, and parts of the record on which appellant relies." (Emphasis added.) In the case at bar, appellant has failed to argue and give reasons in support of his contention that the trial court erred in ordering the forfeiture of his computer and monitor.
 {¶ 131} App.R. 12(A)(2) states that an appellate court "may disregard an assignment of error presented for review if the party raising it fails to identify in the record the error on which the assignment of error is based or fails to argue the assignment separately in the brief, as required under App.R. 16."
 {¶ 132} Consequently, and pursuant to App.R. 12 and 16, we decline to consider appellant's ninth assignment of error. See, also, Hawley v.Ritley (1988), 35 Ohio St.3d 157 (holding an appellate court may disregard an error not properly briefed); State v. Watson (1998), 126 Ohio App.3d 316, 321-322 (declining to review an assignment of error that failed to apply case law cited to the facts of the case).
 {¶ 133} Assignment of Error No. 10:
 {¶ 134} "The trial court erred in permitting the state to reopen its case."
 {¶ 135} In his tenth assignment of error, appellant argues the trial court erred in permitting the state to reopen its case prior to ruling on his motion for acquittal under Crim.R. 29.
 {¶ 136} Crim.R. 29 provides: "The court on motion of a defendant or on its own motion, after the evidence on either side is closed, shall order the entry of a judgment of acquittal of one or more offenses charged in the indictment, information, or complaint, if the evidence is insufficient to sustain a conviction of such offense or offenses." Furthermore, the court may not reserve ruling on a motion for judgment of acquittal made at the close of the state's case. Id.
 {¶ 137} A trial court may permit the state to reopen its case to present additional evidence, however, and the decision to do so will not be reversed on appeal absent an abuse of discretion. Columbus v. Grant
(1981), 1 Ohio App.3d 96, 97. For the purpose of ascertaining the truth, the court also has control over "the mode and order of interrogating witnesses and presenting evidence," Evid.R. 611, and in the interest of justice, the court "may permit evidence to be offered by either side out of order." R.C. 2945.10.
 {¶ 138} At the close of the state's case-in-chief, appellant moved for acquittal, pursuant to Crim.R. 29, on two counts charged in the indictment. The basis for the motion was a failure by the state to properly identify one of the images found on appellant's hard drive. All 26 images presented at trial were labeled to correspond to the names and creation dates of the files found on the drive and to the names of the images listed in the indictment. Detective Shuemake consecutively identified all 26 images. One of the images he identified as "!!!!!!tc.jpg" The indictment, however, charged appellant in conjunction with an image titled "!!!!!!te.jpg." Consequently, appellant argued during his Crim.R. 29 motion that the state failed to prove its case with respect to the two counts in the indictment associated with that image.
 {¶ 139} In response, the court allowed the state to reopen its case and recall Detective Shuemake to attempt to properly identify the image. Upon viewing the images a second time, Detective Shuemake's testimony with respect to the identity of the image corresponded to the label on the image and to the name in the indictment.
 {¶ 140} We find that the circumstances causing the need for the further presentation of evidence in this case were nothing more than a tendency for human error during the process of reading letters, numbers, and symbols on the back of 26 consecutive images. Detective Shuemake gave no indication that anything other than human frailty caused his initial testimony to be faulty. Consequently, nothing in the record convinces us the court's decision to recall Detective Shuemake was an abuse of its discretionary powers. To the contrary, the record reveals the court permitted the state to reopen its case in the interest of justice and in order to ascertain the truth.
 {¶ 141} Accordingly, appellant's tenth assignment of error is overruled.
 {¶ 142} Assignment of Error No. 11:
 {¶ 143} "The trial court erred in imposing excessive and consecutive sentences."
 {¶ 144} In his eleventh assignment of error, appellant appears to contend that the trial court erred by not properly weighing the seriousness and recidivism factors set forth in R.C. 2929.12 and by not imposing a minimum sentence pursuant to R.C. 2929.14.
 {¶ 145} In every felony case, a sentencing court must consider and weigh factors such as the amount of harm suffered by the victim or victims, the age, and mental and physical condition of the victim or victims, the degree of a defendant's remorse, and prior offenses committed by the defendant. (See R.C. 2929.12[B]-[E] for a complete list of the factors to be weighed). In addition, R.C. 2929.14(B)(2) requires a court imposing a prison term to impose the minimum sentence on an offender unless "[t]he court finds on the record that the shortest prison term will demean the seriousness of the offender's conduct or will not adequately protect the public from future crime * * *."
 {¶ 146} While a trial court must comply with the foregoing, it also has broad discretion in sentencing a defendant, and a reviewing court will not interfere with the sentence imposed unless it finds by clear and convincing evidence that the sentence is not supported by the record or is contrary to law or statute. State v. Martin (July 23, 2001), Clermont App. No CA2000-09-075; R.C. 2953.08(G)(1).
 {¶ 147} We have carefully reviewed the transcript of the sentencing hearing in this case and find, contrary to appellant's contention, that the trial court properly complied with the requirements of R.C. 2929.12
and R.C. 2929.14(B)(2). The trial court carefully considered appellant's presentence investigation report and background, his level of remorse, and the seriousness of the harm his offenses caused to the children depicted in the images. The court then stated: "I do not find based upon the information presented that you are amenable to available community control sanctions, and find that a definite term of imprisonment is appropriate and necessary, and [I] further find, and although you have never been to prison before, to impose the minimum term of imprisonment, would demean the seriousness of these offenses, and not adequately protect the public * * *." Accordingly, appellant's contention that the trial court erred in imposing an excessive sentence is not well-taken.
 {¶ 148} Appellant also broadly contends under this assignment of error that the trial court erred in imposing consecutive sentences. Again, however, we disagree.
 {¶ 149} If multiple prison terms are imposed, a trial court must find on the record at the sentencing hearing: (1) the consecutive sentences are necessary to protect the public from future crime or to punish the offender, and (2) they are not disproportionate to the seriousness of the offender's conduct and to the danger the offender poses to the public.
 {¶ 150} In addition, the court must find either: (a) the offender committed a prior offense or one or more of the offenses while awaiting trial or while under post-release control for a prior offense; (b) at least two of the offenses were committed as part of a one or more courses of conduct, and the harm caused by the offenses was so great or unusual that no single prison term adequately reflects the seriousness of the offender's conduct, or (c) the offender's history of criminal conduct reveals consecutive sentences are necessary to protect the public from future harm. R.C. 2929.14(E)(4); State v. Comer, 99 Ohio St.3d 463,2003-Ohio-4165, paragraph one of the syllabus.
 {¶ 151} Finally, a trial court must give reasons on the record that support its statutory findings. Comer, 99 Ohio St.3d at 467,2003-Ohio-4165, ¶ 14. R.C. 2929.19(B)(2)(c).
 {¶ 152} The transcript of the sentencing hearing reveals the trial court made the foregoing required findings on the record. The court stated during disposition that it found consecutive sentences were "necessary to adequately protect the public and to punish the defendant, and * * * not disproportionate to his conduct," and that "the harm was so great or unusual that a single term does not reflect the seriousness of [appellant's] conduct."
 {¶ 153} The record also reveals the court gave reasons in support of its findings. The court discussed at length how appellant's offenses help to continue the exploitation of children, "the weakest of us all," and create a market for taking advantage of those who cannot consent. The court noted appellant's apparent lack of remorse and unwillingness to take responsibility for his actions, and that in its opinion, based upon the information before it, appellant would likely commit future offenses if not appropriately punished. Appellant's claim that the trial court erred in imposing consecutive sentences is therefore not well-taken.
 {¶ 154} The eleventh assignment of error is overruled.
 {¶ 155} Assignment of Error No. 12:
 {¶ 156} "The cumulative effect of the errors occurring at trial deprived appellant of a fair trial."
 {¶ 157} In his twelfth and final assignment of error, appellant claims only that the cumulative effect of the errors below deprived him of a fair trial. Appellant makes no attempt to support his claim other than a citation to State v. DeMarco (1987), 31 Ohio St.3d 191. While we note this assignment of error, like assignment of error nine above, is not properly raised in accordance with App.R. 12 and 16, we nevertheless address the issue.
 {¶ 158} In reviewing appellant's various assignments, we have not found a single instance of prejudicial error. We have held throughout that appellant's assignments fail to establish errors, or that any errors that did occur below were not outcome determinative. We fail to see how the absence of error, or how the accumulation of any nonprejudicial error in this case, can constitute cumulative error. See State v. Moreland,50 Ohio St.3d at 69; State v. Blankenship (1995), 102 Ohio App.3d 534,557. Consequently, appellant's twelfth and final assignment of error is not well-taken.
 {¶ 159} Judgment affirmed.
Powell and Walsh, JJ., concur.
[1] At one point during the interview, appellant admits that he found a lot of different pictures on Internet Newsgroups. Detective Shuemake then asked him why he stored them, to which appellant replied, "Fascination." At another point in the interview, appellant claims he was looking for 17, 18, and 19-year-old girls, but not 13-year-old children.